# United States Court of Appeals
## For the Eighth Circuit

_____

No. 25-1488
_____

United States of America

*Plaintiff - Appellee*

v.

Richard Stone

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Arkansas - Fayetteville

_____

Submitted: April 13, 2026
Filed: July 30, 2026
[Unpublished]

_____

Before LOKEN, SHEPHERD, and STRAS, Circuit Judges.

_____

PER CURIAM.

Richard Stone pled guilty to one count of operating an unlicensed money transmitting business, in violation of 18 U.S.C. § 1960(a). The district court[1] sentenced him to 51 months' imprisonment and 3 years' supervised release. Stone

_____

[1]The Honorable Timothy L. Brooks, Chief Judge, United States District Court for the Western District of Arkansas.

now appeals, arguing that the district court erred in applying a two-level enhancement for receiving funds that he knew or believed were proceeds of unlawful activity pursuant to United States Sentencing Guidelines (USSG) § 2S1.3(b)(1)(A); he also contends that his sentence is substantively unreasonable. Having jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.

Stone was an Arkansas resident and the president of numerous businesses headquartered in Arkansas. Although Stone's businesses purported to develop technology and facilities that could repurpose waste materials into fuel, none of these businesses actually financed any energy projects. Additionally, none of the businesses were registered in Arkansas as money transmitting businesses. This meant they could not be used to "transfer[] funds on behalf of the public by any and all means including but not limited to . . . wire, check, draft, facsimile, or courier." 18 U.S.C. § 1960(b)(2).

Prior to December 2024, investigators discovered 13 federal loan applications from 2020 to 2021 that were fraudulently tied to Stone's personal and business bank accounts. These applications were for Paycheck Protection Program (PPP) loans, which were designed to help businesses keep their workers employed during the Covid-19 pandemic, and Economic Impact Disaster Loans (EIDL), which were offered to small businesses during the pandemic. The applications for these loans used the identities of individuals who did not know Stone and were unaware that loan applications were being made on their behalf. Many of these loan applications also used forged personal identification documents, with the supposed loan "borrowers" directing that the proceeds be deposited into Stone's accounts. The EIDL and PPP loans Stone obtained totaled to $608,782. After Stone received the money, he would wire-transfer most of the funds to parties based in New York, England, Switzerland, and India, while retaining 30% of the amount as payment for his remittances and transfers. Stone's accounts receiving the loans had no other legitimate income aside from Social Security payments.

-2-

Investigators also discovered that Stone used forged or fraudulent checks to deposit funds into his accounts, that he had obtained funds under the Pandemic Unemployment Assistance (PUA) program with applications using the identities of others, and that a company named Hosack Partners IV LLC deposited money into one of his accounts after receiving a phishing email. The loss from these transactions totaled $574,172.10. Including the funds distributed to Stone via EIDL and PPP loans, the total loss amounted to $1,192,954.10.

When investigators asked Stone what he knew about the funds deposited into his accounts, he claimed that he believed they were merely investments or loans from outside investors into his businesses, and that some of these investors wanted him to transfer funds on their behalf to other accounts. However, Stone then admitted that he did not have any documentation for these supposed "loans" from investors. And he claimed that he believed the PPP funds deposited into his accounts were loans coming from "Private Public Partnership[s]" with investors.

Stone was charged via information with knowingly conducting, controlling, managing, supervising, directing, or owning all or part of an unlicensed money transmitting business, in violation of 18 U.S.C. § 1960(a). Stone pled guilty to this count pursuant to a plea agreement, and afterwards the United States Probation Office prepared a Presentence Investigation Report (PSR) that calculated a total offense level of 17 and an advisory imprisonment range of 24 to 30 months. The PSR's calculation included a two-level enhancement under USSG § 2S1.3(b)(1)(A), which applies when a defendant knows or believes that the funds associated with a crime are proceeds of unlawful activity.

At sentencing, Stone objected to the PSR's application of the § 2S1.3(b)(1)(A) enhancement. He argued that the government did not have any direct evidence that he knew the funds came from unlawful activity and that he honestly believed the funds were from legitimate investors. The district court overruled Stone's objection and applied the enhancement. It stated that "the fact that the government has no direct evidence of what was inside Mr. Stone's head during . . . these transactions is

-3-

not particularly surprising or helpful," instead noting that the context of the case and Stone's actions were more significant. The district court then pointed to numerous facts indicating that Stone knew about the illegality of the funds, including that Stone "was apparently the president or chief executive officer of numerous [energy-related] businesses. . . . [despite] there [being] no evidence that energy projects were ongoing or being financed"; that "shortly after the deposits would be placed into Stone's [bank] account[s] . . . Stone would quickly move the funds to unknown people, [whom] he calls . . . investors, or to other accounts that Stone controlled"; that Stone "attempted to deposit checks that were forged or fraudulent into three . . . additional banks and accounts"; and that Stone's businesses were "'corporate shells' because [they] did not appear to have any employees, . . . any assets, . . . [or] any operations." The district court then found that Stone's version of the events was not reasonable, giving the following explanation:

> [Stone's objection relies on] . . . three sets of unknown people[:] the unknown online people, the unknown foreign investors, and the unknown people whose names appear on the remittances for the government loan proceeds that [we]re wired into his accounts . . . [from which] the funds were immediately wired out . . . [to] unknown investors in multiple different foreign companies. And despite that background, [Stone] says that, at all times, he thought that all of this was legitimate.

Ultimately concluding that it "simply d[id] not find Mr. Stone's . . . objection to be credible," the district court instead said that it "believe[d] that Mr. Stone was a cog in a larger network of fraudsters."

After the district court rejected Stone's objection to the enhancement, it determined that an above-Guidelines-range sentence was appropriate. In reviewing the factors enumerated in 18 U.S.C. § 3553(a), it noted that Stone attempted to engage in similar suspicious financial activity even after he pled guilty, which "suggests . . . that there is a likelihood that [he] would continue to do that in the future." The district court was thus concerned that Stone would "reoffend in the future in a way that puts public safety in jeopardy," and it further explained that the

recommended Guidelines-range sentence did not reflect the relative seriousness of the crime. Thus, while the district court acknowledged some mitigating factors—such as Stone's advanced age—it ultimately varied upward and imposed an above-Guidelines-range sentence of 51 months' imprisonment. Stone appeals.

## II.

Stone first contends that the district court erred in applying the two-level knowledge enhancement under USSG § 2S1.3(b)(1)(A). He maintains that he believed the deposits in his account were from legitimate foreign investors and that there is no direct evidence that he knew they were fraudulent. "We review the district court's application of the Guidelines and imposition of sentencing enhancements de novo" and "review factual findings at sentencing for clear error." United States v. McGhee, 129 F.4th 1095, 1102 (8th Cir.) (citation omitted), cert. denied, 146 S. Ct. 620 (2025). Such "[f]indings will be reversed only if the entire record definitely and firmly establishes that a mistake has been made." United States v. Anderson, 618 F.3d 873, 879 (8th Cir. 2010). Furthermore, "[w]hen the factual findings by the trial court are based on the credibility of witnesses, they are 'virtually unreviewable.'" United States v. Moore, 242 F.3d 1080, 1081 (8th Cir. 2001) (citation omitted).

USSG § 2S1.3(b)(1)(A) states that, in relation to money laundering or other similar financial crimes, two levels are to be added to a defendant's base offense level if he "knew or believed that the funds were proceeds of unlawful activity, or were intended to promote unlawful activity." Here, the district court did not err in applying the enhancement. The district court pointed to numerous facts from the record indicating that Stone knew about the illegality of the funds, including the suspicious nature of his companies, his moving of funds quickly between his accounts, and the fact that he tried to deposit forged or fraudulent checks into his accounts. The district court also found that Stone's explanation of events, which involved him trusting "three sets of unknown people" to transfer funds using his accounts, was not credible—a "virtually unreviewable" finding on appeal. Moore,

242 F.3d at 1081 (citation omitted).  Thus, the district court did not err in imposing the enhancement.

Stone next contends that his sentence is substantively unreasonable.  "When we review the imposition of sentences, whether inside or outside the Guidelines range, we apply 'a deferential abuse-of-discretion standard.'"  United States v. Feemster, 572 F.3d 455, 461 (8th Cir. 2009) (en banc) (citation omitted).  "[I]t will be the unusual case when we reverse a district court sentence—whether within, above, or below the applicable Guidelines range—as substantively unreasonable."  Id. at 464 (citation omitted).

Here, Stone acknowledges that the district court "was aware of, and did consider, the § 3553(a) factors," but he argues that it "should have placed more mitigating weight" on factors such as his age and community service.  However, we have held numerous times that "a sentencing court has wide latitude to weigh the section 3553(a) factors . . . and assign some factors greater weight than others."  United States v. Roberts, 747 F.3d 990, 992 (8th Cir. 2014) (citation omitted).  Thus, "[Stone's] disagreement with the district court's balancing of relevant considerations does not show that the court abused its discretion."  United States v. Campbell, 986 F.3d 782, 800 (8th Cir. 2021).

III.

For the foregoing reasons, we affirm the judgment of the district court.
_____